UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  22-CV-81396-CANNON/REINHART

SANDRA MICELI,

                Plaintiffs

vs.

SMITH & NEPHEW, INC., et al.,

                Defendants.
_____/

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR REMAND (ECF No. 22)**

      Plaintiff moves to remand this matter to Palm Beach County Circuit Court. ECF No. 22.  Plaintiff argues that the claims in her Amended Complaint against several Florida Defendants (J.E. Scanlon Surgical, LLC, John Scanlon, and Heather Clay Wright) destroy diversity.  Defendants argue (1) that the original Complaint is the operative pleading (not the Amended Complaint), and (2) that joinder of the Florida Defendants is inappropriate because there is no reasonable possibility that Plaintiff can state a valid claim against them.

      I have reviewed the Notice of Removal, Plaintiff's Motion to Remand (ECF No. 22), Defendants' Response (ECF No. 25), Plaintiff's Reply (ECF No. 26), and all exhibits attached to these papers, as well as both the original and Amended Complaints (ECF No. 23-3, 23-14).  I recommend that the Motion to Remand be **GRANTED.**

I.  BACKGROUND

On August 10, 2022, Plaintiff filed her original Complaint in Florida's Fifteenth Judicial Circuit Court against Defendants Smith & Nephew, Inc. (S&N), J.E. Scanlon Surgical, LLC, and John Scanlon for strict product liability (based on failure to warn and defective design), negligence, and negligent misrepresentation. ECF No. 23-3. These claims arise from Plaintiff's 2014 hip replacement surgery performed by Dr. Holly Brown Lenard. Dr. Lenard implanted in Plaintiff an Echelon stem (manufactured by S&N), which subsequently fractured. *Id.* The Complaint alleges that the stem was sold and distributed by the Scanlon Defendants, who are Florida sales representatives for S&N.

On September 7, 2022, Plaintiff filed an Amended Complaint in state court, adding Defendant Heather Wright, who is also a Florida S&N sales representative. ECF No. 23-14.[1] The following day, despite being aware of the Amended Complaint, Defendants filed a notice of removal based on the original pleading. ECF No. 1.

Defendants' notice of removal states that Plaintiff is a Florida citizen, and that S&N is a Delaware corporation with its principal place of business in the State of Tennessee; therefore, it alleges complete diversity between them. ECF No. 1 at 4 (citing 28 U.S.C. § 1332(c)). Defendants concede that the Scanlon Defendants are citizens of Florida, but contend that the Court should disregard this citizenship because the Scanlon Defendants were fraudulently joined to defeat diversity. *Id.* at

---

[1] The Amended Complaint also added two new claims for strict product liability alleging manufacturing defect and breach of warranty. All counts are alleged against all Defendants.

5.[2] According to Defendants, Plaintiff has no reasonable basis for the claims brought against any of the Florida Defendants. ECF No. 25.at 8-9.

Attached to Defendants' notice of removal is a declaration by Defendant John Scanlon wherein he denies being a retailer or distributor of the Echelon stem. ECF No. 1-3 at ¶ 4. Scanlon states that as the sole managing member of Scanlon Surgical, he is merely a sales representative for S&N and "never made any representations" about the Echelon stem to Dr. Lenard. *Id.* at ¶¶ 2, 15. According to Scanlon, Dr. Lenard was "already using the Echelon stem extensively in her practice from the time I first met her in 2012" and "Dr. Lenard made her own decisions about which components to use for her patients." *Id.* at ¶ 17. Scanlon states that "it was my job as a sales representative to verify that [S&N] had shipped or delivered the correct components requested by the surgeon and to ensure that the components were in the operating room for the doctor's use during the procedure." *Id.* at ¶ 19. Scanlon does not recall Plaintiff's 2014 hip replacement surgery. *Id.* at ¶ 9.

Attached to Plaintiff's motion to remand is a declaration by Dr. Lenard. She attests that Defendants Scanlon and Wright "promoted and supported the use of, and supplied, [S&N] products;" Dr. Lenard further states that Defendants Scanlon and Wright were "present in the operating room during procedures" when she used S&N implants, and that they "concurred [that] the Echelon stem was appropriate for

---

[2] According to Defendants, even if the Court deems the Amended Complaint to be the operative pleading at the time of removal, "the result would be the same" because Defendant Wright, a Florida citizen, was also fraudulently joined to defeat removal. ECF No. 25 at 3 (citing Wright's Declaration at ECF No. 25-1).

revision surgeries." ECF No. 22-5 at ¶¶ 4, 7, 9. According to Dr. Lenard, Defendants Scanlon and Wright conveyed that the Scanlon stem was safe as well as appropriately tested, and they never told Dr. Lenard about the product having a reported history of stem fractures. *Id.* at ¶¶ 10-12. Exhibit F to Plaintiff's motion is the hospital record from Plaintiff's surgery, which identifies Defendant Wright as being present in the operating room during Plaintiff's surgery. ECF No. 22-6.

Attached to Defendants' response to Plaintiff's motion is a declaration by Defendant Wright who, like Scanlon, attests that she is a sales representative for S&N, but has never been a retailer or distributor of their devices. ECF No. 25-1 at ¶¶ 3, 6. Wright states that she "was the sales representative who most frequently covered Dr. Lenard's surgeries" and that while she has no specific recollection of being present during Plaintiff's surgery, she has no reason to doubt the accuracy of the hospital record. *Id.* at ¶ 9.

According to Wright, "Dr. Lenard had a far greater knowledge, understanding, and experience with [S&N's] orthopedic products than I did;" Wright denies having the medical training to "concur" in Dr. Lenard's medical decisions. *Id.* at ¶¶ 12, 18. Wright recalls that Dr. Lenard was "already a loyal and frequent user of those products" and that she "made her own decisions" in selecting the various components and instruments she wanted to have available for her surgeries. *Id.* at ¶¶ 13, 14, 24.

Wright states that she "was not asked for, nor did [she] give [Dr. Lenard] advice about which components to use" and that she has no recollection of making representations to Dr. Lenard about the qualities or performance of the Echelon stem.

4

*Id.* at ¶¶ 14, 15. According to Wright, any information she provided to Dr. Lenard about the stem was "entirely based'" on information S&N gave to Wright. *Id.* at ¶ 17. Wright denies recommending or encouraging Dr. Lenard to use the Echelon stem. *Id.* at ¶ 18. Wright acknowledges that her "role was to solicit sales of certain [S&N] orthopedic products," but she contends that she did not sell the Echelon stem used in Plaintiff's surgery; rather, she claims that S&N sold the stem to the hospital where Plaintiff had her surgery. *Id.* at ¶¶ 23, 24.

Finally, Wright denies ever having knowledge of any defect in the Echelon stem; nor does she recall knowing about any Echelon stem fractures. *Id.* at ¶¶ 27, 28. Wright's declaration concludes, "It is not my job . . . to keep surgeons like Dr. Lenard informed of . . . adverse events associated with a device." *Id.* at ¶ 37.

In response to Plaintiff's motion, Defendants contend that neither Wright nor the Scanlon Defendants are part of the distribution chain and therefore under Florida law, Plaintiff's strict product liability claims against them must fail. ECF No. 25. Defendants further contend that Plaintiff's claims for negligence and negligent misrepresentation against the Florida Defendants must fail because Plaintiff cannot show that they knew or should have known of defects in the Echelon stem, which is required for both causes of action.

Plaintiff counters that the Defendants have not met their high burden to show by clear and convincing evidence that there is no possibility a cause of action can be established against any of the Florida Defendants. Attached to Plaintiff's reply is a supplemental declaration by Dr. Lenard wherein she attests that the Echelon product

5

brochures were "incomplete and misleading" because they did not contain information about the stem fractures. ECF No. 26-1 at ¶ 2. Dr. Lenard further states that she "expect[s] device representatives, including John Scanlon and Heather Clay [Wright], to have, track and communicate device safety and performance information like this to me," but they did not. *Id.*

## II. LEGAL STANDARD

A defendant may remove a civil action or proceeding to federal court by filing a Notice of Removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). A civil case filed in a state court may be removed to federal court by a defendant if the case could have originally been brought in federal court. 28 U.S.C. § 1441(a). Federal courts have diversity jurisdiction over civil actions when the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a).

Diversity jurisdiction requires complete diversity; "all plaintiffs must be diverse from all defendants." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999). When a defendant removes an action to federal court on diversity grounds, a court must remand the matter to state court if complete diversity is lacking between the parties or if any of the properly served defendants are citizens of the state in which the suit was filed. *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007). It is well settled that the party removing the action to federal

court has the burden of establishing diversity of citizenship for the purposes of federal jurisdiction. *Scoggins v. Pollock*, 727 F.2d 1025, 1028 (11th Cir. 1984).

When a court is reviewing the citizenship of the parties to determine if the suit meets the requirements of diversity jurisdiction, the court must look to the citizenship of the parties at the time the action was filed and at the time of removal. *Stevens v. Nichols*, 130 U.S. 230, 231 (1889). "Federal courts are directed to construe removal statutes strictly, resolve all doubts about jurisdiction in favor of remand, and employ a presumption in favor of remand to state courts." *Toskich v. J.H. Investment Serv., Inc.*, 806 F. Supp. 2d 1224, 1226–27 (M.D. Fla. 2011) (citing *Univ. of S. Ala.*, 168 F.3d at 411). *See also Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979).

"[T]he law is clear that the citizenship of all named defendants, *whether served with process or not*, must be considered in determining whether complete diversity exists." *Ott v. Consol. Freightways Corp. of Delaware*, 213 F. Supp. 2d 662, 664 (S.D. Miss. 2002) (emphasis in original) (citing 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3723, at 624–25 3d ed. 1998) (where nondiverse defendant has been named but not served, the case may not be removed until that party is dismissed from the case)). *See also Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939) ("the non-resident defendant should not be permitted to seize an opportunity to remove the cause before service upon the resident co-defendant is effected").

However, an exception to remand for lack of diversity exists "'[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction;"

in such circumstances "the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court.'" *Epstein v. Gilead Scis., Inc.*, 441 F. Supp. 3d 1277, 1280 (S.D. Fla. 2020) (quoting Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011). "In such a case, the addition of the non-diverse defendant is considered a 'fraudulent joinder.'" *Id*. *In re Aesculap Implant Systems LLC*, No. 2:19-CV-14439, 2019 WL 7343255, at *1 (S.D. Fla. Dec. 31, 2019) (citing *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006)). "To establish fraudulent joinder, the removing party must prove by clear and convincing evidence that there is no possibility that the plaintiff can state a claim against the non-diverse defendant." *Id*.[3] Under this "heavy" burden, courts must remand if the plaintiff "states even a colorable claim against the resident defendant." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

A ruling on fraudulent joinder "must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Id*. "[T]he district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe*, 113 F.3d at 1538. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court

---

[3] Alternatively, fraudulent joinder can be based on a claim that a plaintiff fraudulently pled jurisdictional facts (*Epstein*, 441 F. Supp. 3d at 1280-81), but that theory is not at issue here.

must find that the joinder was proper and remand the case to the state court." *Epstein*, 441 F. Supp. 3d at 1281 (quoting *Stillwell*, 663 F.3d at 1333).

III. DISCUSSION

1. *The Operative Pleading*

At the outset, I reject Defendants' contention that the original Complaint filed in state court (which did not name Defendant Wright) is the operative pleading for purposes of determining whether removal was appropriate or remand is required. Defendants do not cite any binding legal authority for their claim that the Amended Complaint was a nullity because it had not yet been served on Wright. ECF No. 25 at 2.[4] The case law is clear that the Amended Complaint became the operative pleading upon its filing and therefore, Defendants' notice of removal should have been based on it. *See Pastis Partners, Inc. v. Realty Assocs. Fund VIII, L.P.*, No. 07-22507-CIV, 2007 WL 9702188, at *3 (S.D. Fla. Dec. 17, 2007) (where diverse defendant filed notice of removal after amended complaint was filed naming non-diverse defendant (but before non-diverse defendant was served) court held that "removal of the action was improper because complete diversity did not exist at the time of removal"). *See also Massey v. SOKC, LLC*, 2012 WL 4866935, *2 (M.D. Fla. Oct. 15, 2012) ("Where a plaintiff files an amended complaint adding a party defendant, the amended complaint becomes the operative complaint for purposes of determining jurisdiction at removal."); *Ross v Sams East, Inc.*, 2006 WL 1643999 (M.D. Fla. June 12, 2006)

---

[4] Defendants do not dispute that they were aware of the Amended Complaint before filing their notice of removal.

9

(The operative complaint for purposes of determining jurisdiction was the amended complaint that was filed earlier in the day that the notice of removal was filed.).

Notwithstanding Defendants' erroneous reliance on the original Complaint, I note that in their response to Plaintiff's motion, Defendants also address the merits of the claims against Defendant Wright as alleged in the Amended Complaint. Therefore, I will construe Defendants' notice of removal as being based on the Amended Complaint.

2. *Fraudulent Joinder*

To establish fraudulent joinder, the Defendants must prove by clear and convincing evidence that there is no possibility that Plaintiff can state a claim against any of the Florida Defendants. I must evaluate the factual allegations in the light most favorable to Plaintiff and must resolve any uncertainties about state substantive law in favor of Plaintiff.

In the Amended Complaint, Plaintiff brings the following claims against all the Defendants:

- Count I – Strict Product Liability – Failure to Warn
- Count II – Strict Product Liability – Defective Design
- Count III – Strict Liability – Manufacturing Defect
- Count IV – Strict Liability – Breach of Warranty
- Count V – Negligence
- Count VI – Negligent Misrepresentation

ECF No. 23-14.

a. <u>Counts I and IV – Strict Product Liability</u>

The Amended Complaint alleges four distinct strict product liability claims, however it appears that only the first cause of action (failure to warn) could be

attributable to the Florida Defendants, as sales representatives.[5] Counts I alleges in relevant part that the Florida Defendants are strictly liable for failure to warn because they marketed, promoted and sold the Echelon stem, but did not notify Plaintiff's physician about the dangers it posed, resulting in injury to Plaintiff. ECF No. 23-14.

"To state a claim for strict liability, the plaintiff must show: (1) the defendant sold a product in a defective condition unreasonably dangerous to the user, (2) the defendant is engaged in the business of selling such a product, (3) the product is expected to and does reach the user without substantial change in its condition, and (4) the user or her property is physically harmed as a result." *In re Aesculap Implant Sys. LLC*, No. 2:19-CV-14421, 2019 WL 7343255, at *1 (S.D. Fla. Dec. 31, 2019) (citing West v. Caterpillar Tractor Co., 336 So. 2d 80, 84 (Fla. 1976)).

In Florida, "[t]he underlying basis for the doctrine of strict liability is that those entities within a product's distributive chain 'who profit from the sale or distribution of [the product] to the public, rather than an innocent person injured by it, should bear the financial burden of even an undetectable product defect.'" *Samuel Friedland Family Enterprises v. Amoroso*, 630 So. 2d 1067, 1068 (Fla. 1994) (quoting *N. Miami General Hosp., Inc. v. Goldberg*, 520 So.2d 650, 651 (Fla. Dist. Ct. App. 1988)). "Those

---

[5] Although Plaintiff asserts all six counts against every Defendant, there are no facts alleged in the Amended Complaint to show that the Florida Defendants were involved with the Echelon stem's design or manufacture (Counts II and III). Likewise, as Defendants assert in their response, a breach of warranty claim (Count IV) requires Plaintiff to demonstrate privity of contract with the Defendant and there is no allegation that Plaintiff purchased the stem from the Florida Defendants. ECF No. 25 at 20-21; *see also Wilssens*, 2009 WL 9151079 at *8.

entities are in a better position to ensure the safety of the products they market, to insure against defects in those products, and to spread the cost of any injuries resulting from a defect." *Id.* The Florida courts "have limited the doctrine's application to manufacturers and others in the distributive chain, including retailers, wholesalers, and distributors." *Epstein*, 441 F. Supp. 3d at 1282 (quoting *Wilssens v. Medtronic, Inc.*, 2009 WL 9151079, at *7 (S.D. Fla. Jul. 23, 2009)).

> Although Florida courts have considered numerous factors in determining whether a defendant is part of a product's distributive chain, the most important is the degree of control the defendant exercised over the product. Although "a plaintiff need not prove the defendant was ever in physical possession," the defendant must have "possessed some element of control over the allegedly defective product." Other considerations include "whether the person or entity placed the product in the stream of commerce, is in a position to control the risk of harm a product might cause once put into the stream of commerce, or either created or assumed the risk of harm for the defective product."

*In re Aesculap Implant Sys. LLC*, 2019 WL 7343255, at *2 (quoting *Rivera v. Baby Trend, Inc.*, 914 So. 2d 1102, 1104 (Fla. Dist. Ct. App. 2005)).

Some courts in this district decline to include sales representatives in the distributive chain, because they have "no involvement in the testing, design, or research of the [product], and are not in a position to ensure the [its] safety, or to spread the cost of an injury resulting from [its] use." *Epstein*, 441 F. Supp. 3d at 1282 (citing *Wilssens*, 2009 WL 9151079, at *7). These court often find that sales representatives are "a mere 'conduit of information' between the manufacturer and purchaser," and therefore are not part of the distributive chain, particularly where there is no evidence that the representative "had any causal relationship with the alleged defect." *In re Aesculap Implant Sys. LLC*, 2019 WL 7343255, at *2 (quoting

*Siemens Ener. & Automation, Inc. v. Medina*, 719 So. 2d 312, 314 (Fla. Dist. Ct. App. 1998)).

Other federal courts have found that having "no hand in designing the implants and [not knowing] of their defects isn't dispositive . . . Instead, taking an active role in marketing and selling a product appears to be enough for Florida courts." *In re Aesculap Implant Sys. LLC*, 2019 WL 7343255, at *3 (quoting *In re: Biomet M2a Magnum Hip Implant Products Liability Litigation*, MDL 2391, 2016 WL 3901366, at *6 (N.D. Ind. July 18, 2016) (citing *Barnes v. Bayside Orthopaedics, Inc.*, No. 8:11-CV-2827-T-30EAJ, 2012 WL 162368, at *2 (M.D. Fla. Jan. 19, 2012) and *Martin v. Medtronic, Inc.*, No. 5:11-CV-144/RS-CJK, 2011 WL 2473318, at *1 (N.D. Fla. June 22, 2011)). In assessing a person or entity's role in the distributive chain, courts should look beyond labels such as "sales representative" and "distributor" and focus on the defendant's actual involvement in the product's distribution. *In re Aesculap Implant Sys. LLC*, 2019 WL 7343255, at *4.

I find that the facts presented here are distinguishable from those cases where courts concluded that sales representatives were fraudulently joined because they were not part of the distribution chain. Specifically, the declarations submitted by Dr. Lenard counter those submitted by Defendants Wright and Scanlon and create issues of fact that must be resolved in favor of Plaintiff. By contrast, in *Epstein*, plaintiff only countered the affidavits from the defendant sales representatives with statements contained on their LinkedIn profiles. *Epstein*, 441 F. Supp. 3d 1281-82. And in *Legg v. Wyeth*, the plaintiff offered "no evidence" to dispute the sworn

13

statements of the pharmaceutical sales representatives who attested that they did not sell or promote the drug at issue and had no knowledge of its dangers. *Legg,* 428 F.3d 1317, 1323 (11th Cir. 2005).

Although Scanlon and Wright characterize their roles as purely logistical, with their responsibility being only to ensure that whatever device the surgeon selected was present in the operating room, this conflicts with Dr. Lenard's declaration, which states that Scanlon and Wright "promoted" S&N's products, "supported" her use of them, and "concurred [that] the Echelon stem was appropriate for revision surgeries." ECF No. 22-5 at ¶¶ 4, 9. Indeed, Defendant Wright acknowledges in her declaration that it was her job to "solicit sales" of S&N's orthopedic products. ECF No. 25-1 at ¶ 24. Although Wright denies that she solicited Dr. Lenard (*id.*), Dr. Lenard indicates that she relied on Wright's communications with her in deciding to use the Echelon stem. ECF No. 22-5 at ¶¶8-10. While Wright and Scanlon contend that they were mere conduits of the information S&N provided to them, Dr. Lenard countered that her "conversations and communications" with Scanlon and Wright caused her to believe that the products were safe and had been appropriately tested. ECF No. 22-5 at ¶ 10.

And, perhaps most telling, the declarations are in agreement that it was customary for the sales representative to be present in the operating room during procedures when Dr. Lenard implanted S&N devices into her patients and, indeed, the record indicates that Defendant Wright was in fact present for Plaintiff's surgery. *Id.* at ¶ 7. I find that Wright's presence in the operating room reveals the importance

14

of the sales representative's role in the distribution chain because it reflects the degree to which surgeons, such as Dr. Lenard, relied upon their knowledge of the device. Contrary to Defendant Wright's claim that it was not her job to inform surgeons about reported adverse events associated with a device, Dr. Lenard's supplemental declaration makes it clear that she relies upon sales representatives to do just that.

At this stage it is not for me to decide whether Dr. Lenard's expectations of or reliance on Defendants' sales representatives were reasonable, or whether her declaration is accurate. Viewing the facts in the light most favorable to Plaintiff, as I must at this phase, I find that there is a direct correlation between the representations made by the Florida Defendants and Dr. Lenard's selection of a particular device (here, the Echelon stem), culminating in the device being placed in the stream of commerce. Moreover, although the Defendants' declarations do not address their compensation structure, it is reasonable for the Court to infer that the Florida Defendants profited from their sales of the Echelon stem, which is further evidence of their role in the distribution chain.

*In re Aesculap Implant Sys. LLC*, 2019 WL 7343255, is instructive. There, the court assessed whether the defendants "function[ed] as mere conduits of information" between the hospital and manufacturer or whether they "exercise[d] a sufficient degree of control over the implants' distribution to be part of the distributive chain." *Id*. at *4. The Court remanded the case, finding that it had not been presented with clear and convincing evidence that the non-diverse defendants were mere conduits of

15

information, noting that the defendants' declarations were "vague with respect to the logistics of sales to the medical centers." *Id.* The court noted that the contract between the manufacturer and sales representative was not provided and that "[t]he declarations are silent as to who takes and routes the medical center's order, who maintains the inventory of the products at issue, how the product reaches the medical center, and the manner of [the sales representative's] compensation—all of which are relevant indicia of control under Florida law." *Id.*

Similarly, here, I do not find that Defendants have met their heavy burden of establishing fraudulent joinder because I cannot find that there is "no possibility" that Plaintiff can state a viable claim for relief against the Florida Defendants (at a minimum against Defendant Wright) for strict product liability based on a duty to warn.[6] And, I am mindful that "any doubts regarding the existence of removal jurisdiction should be resolved in favor of remand." *Wilssens*, 2009 WL 9151079, *2 (citing *Whitt v. Sherman Intern. Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1989)).

b. Counts V and VI – Negligence and Negligent Misrepresentation

The relevant claims in the Amended Complaint allege that the Florida Defendants knew or should have known of the fracture and failure rate of the Echelon stem and should have warned Plaintiff's physician of the risk, but instead they continued to market and sell the stem. ECF No. 23-14 at 28, 30, 31. The pleading

---

[6] Given that Defendant Scanlon was not present during Plaintiff's surgery, the case against the Scanlon Defendants is arguably weaker than Plaintiff's case against Defendant Wright, however, there need only be one properly joined, non-diverse Defendant for remand to be appropriate.

claims that these Defendants were negligent in the sale, marketing, promotion, and distribution of the stem because they misrepresented material facts regarding its safety and claimed the stem had been adequately tested. *Id.* at 29-30, 32. According to the Amended Complaint, Defendants also misrepresented that the Echelon stem's risk of adverse effects was better than or comparable to other hip replacement systems. *Id.* at 30, 32. Plaintiff alleges that Defendants made these misrepresentations to induce physicians, including Dr. Lenard, to purchase the Echelon stem. *Id.* at 37.

To state a claim for negligence under Florida law, Plaintiff must establish that "(1) the defendant had a duty to protect the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages." *Epstein*, 441 F. Supp. 3d at 1282–83 (Clay v. Wyeth, 2004 WL 7330338, at *8 (M.D. Fla. Aug. 17, 2004)).

To establish negligent misrepresentation, a Plaintiff must show that (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation. *Baggett v. Electricians Loc. 915 Credit Union*, 620 So. 2d 784, 786 (Fla. Dist. Ct. App. 1993) (citing *Atlantic National Bank of Florida v. Vest*, 480 So.2d 1328, 1331 (Fla. Dist. Ct. App. 1985)).

With regard to Plaintiff's negligence claim, I find that the competing declarations create a factual dispute regarding whether the Florida Defendants should have known about the alleged defects in the Echelon stem. Given that I must view those facts in the light most favorable to Plaintiff and assume at this stage that the Florida Defendants had a duty to know about the defect and advise Dr. Lenard, I find that Plaintiff has alleged at least a colorable negligence claim against the Florida Defendants.

Whether Plaintiff has a valid negligent misrepresentation claim against the Florida Defendants is a closer question that I need not resolve. Even if there were no possibility that Plaintiff could establish this cause of action against the Florida Defendants, the existence of other colorable claims against them requires that the case be remanded.

In sum, for the Court to find that the Florida Defendants have been *fraudulently joined*, the Defendants must meet the heavy burden of proving by clear and convincing evidence that there is no possibility that Plaintiff can state any claim against any of them. Evaluating all the factual allegations in the light most favorable to Plaintiff and resolving any uncertainties about state substantive law in favor of Plaintiff, as I must, I do not find that the Defendants have met that burden. However, given the strength of the Scanlon and Wright declarations, I find that there was an objectively reasonable basis for Defendants' removal and deny Plaintiff's request for fees and costs. *See In re Aesculap Implant Sys. LLC*, 2019 WL 7343255, at *4 (while courts may order the payment of attorney's fees and costs "incurred as a result of the

removal," courts should do so only when the removing party lacked "an objectively reasonable basis" to remove the case) (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)).

## RECOMMENDATION

Accordingly, it is **RECOMMENDED** that the Plaintiff's Motion to Remand (ECF No. 22) be **GRANTED,** and the case be remanded to back to state court.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers this 28th day of November, 2022 at West Palm Beach in the Southern District of Florida.

BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE